06-5516-ag
Walcott v. Chertoff, et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2007

(Argued: December 12, 2007           Decided:  February 19, 2008)
Amended: February 28, 2008)

Docket No. 06-5516-ag

-------------------------------------------------------------------------------------x

JERMAINE WALCOTT,

                Petitioner,

        -v.-

MICHAEL CHERTOFF,[*] Secretary, Department of Homeland Security;
MICHAEL J. GARCIA, Assistant Secretary (designee), U.S. Immigration
and Customs Enforcement; EDWARD J. MCELROY, Interim New York
City Field  Director, U.S. Immigration and Customs Enforcement;
DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

                Respondents.


-------------------------------------------------------------------------------------x


B e f o r e :    CARDAMONE and POOLER, Circuit Judges, and KEENAN,
District Judge.[**]

Petitioner seeks review of a decision of the Board of Immigration Appeals finding him

deportable as an aggravated felon and ineligible to seek a discretionary waiver of deportation

pursuant to former section 212(c) of the Immigration and Nationality Act.


Petition granted; vacated and remanded.


               MATTHEW L. GUADAGNO, Bretz & Coven, LLP,
               (Jules E. Coven and Kerry W. Bretz, on the brief),
               New York, N.Y., for Petitioner.

---

    [*]  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary Michael Chertoff is
automatically substituted for former Secretary Thomas Ridge as respondent in this case.
    [**] The Honorable John F. Keenan, United States District Judge for the Southern District of New
York, sitting by designation.

ANDREW M. MCNEELA, Assistant United States Attorney *for* Michael J. Garcia, United States Attorney for the Southern District of New York (Ross E. Morrison, Assistant United States Attorney, *on the brief*), New York, N.Y., *for Respondents*.

KEENAN, <u>District Judge</u>:

## Introduction

Petitioner Jermaine Walcott ("Petitioner") challenges a September 23, 2002 decision of the Board of Immigration Appeals ("BIA") holding that, pursuant to § 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1277 (Apr. 24, 1996), his aggravated felony conviction made him ineligible for discretionary relief from deportation under former § 212(c) of the Immigration and Nationality Act ("INA").[1] Petitioner claims that the application of the AEDPA to his case was impermissibly retroactive under <u>Restrepo v. McElroy</u>, 369 F.3d 627, 634-35 (2d Cir. 2004), even though his conviction was on appeal when the AEDPA took effect. For the reasons discussed below, we find that Petitioner may assert a <u>Restrepo</u> claim of reliance which, if proven before an immigration judge, <u>see</u> <u>Wilson v. Gonzales</u>, 471 F.3d 111 (2006), would make AEDPA's § 440(d) impermissibly retroactive as applied to him. The BIA's decision is vacated and the matter remanded to the BIA for further remand to an immigration judge so that Petitioner can attempt to make an individualized showing of reliance.

---

[1] This petition was initially filed in the Southern District of New York as a petition for habeas corpus, but, pursuant to § 106(c) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, 310-11 (May 11, 2005) (codified at 8 U.S.C. § 1252 note), was transferred to this Court and is deemed a petition for review.

## Background

Petitioner is a thirty-four year old native and citizen of Guyana who became a lawful permanent resident of the United States in 1985. On March 8, 1996, a jury in a New York State court convicted him for the criminal sale of a controlled substance, an aggravated felony. He was sentenced to a term of imprisonment of four-and-one-half to nine years. About seven weeks after Petitioner's trial, while his conviction was on appeal, the AEDPA took effect. Section 440(d) of that Act amended the INA to eliminate § 212(c) relief for aliens convicted of certain crimes, including any aggravated felony. Petitioner's conviction remained on appeal until it was affirmed by the Appellate Division, Second Department on June 1, 1998, and the New York Court of Appeals denied his petition for leave to appeal on July 1, 1998. See People v. Walcott, 251 A.D.2d 356 (2d Dep't 1998), appeal denied, 92 N.Y. 2d 883 (1998).

On July 26, 1996, the immigration authorities commenced deportation proceedings against Petitioner based on his March 1996 conviction and other grounds not relevant to this petition. On April 19, 2002, following a series of administrative proceedings, an immigration judge ordered Petitioner deported for the March 1996 conviction. The immigration judge also found that the Supreme Court's retroactivity holding in INS v. St. Cyr, 533 U.S. 289 (2001), did not prohibit application of AEDPA's § 440(d) to bar Petitioner's eligibility for § 212(c) relief because St. Cyr applied only to aliens who pleaded guilty prior to the repeal of § 212(c) and not to those who, like Petitioner, were convicted at trial. The BIA affirmed the immigration judge's decision on September 23, 2002, rejecting Petitioner's argument that the holding of St. Cyr extended to aliens whose ground for deportation is a trial conviction.

3

## Applicable Law

This case calls upon us to again consider the potential retroactive effect of the AEDPA upon an alien ordered deported for a pre-AEDPA aggravated felony conviction. As mentioned above, § 440(d) of the AEDPA barred certain aliens, including those convicted of aggravated felonies, from seeking § 212(c) relief.[2] Prior to the AEDPA, INA § 212(c) provided discretionary relief from deportation for aliens who could demonstrate that (1) they had been admitted to the United States as lawful permanent residents; (2) they had resided in the United States for at least seven years; and (3) their convictions were not for aggravated felonies for which they had served terms of imprisonment of five years or longer.[3] 8 U.S.C. § 1182(c)(repealed 1996); see Wilson v. Gonzales, 471 F.3d 111, 117-18 (2d Cir. 2006).

St. Cyr provides the starting point for our AEDPA retroactivity inquiry. In St. Cyr, the Supreme Court applied the retroactivity analysis of Landgraf v. USI Film Prods., 511 U.S. 244 (1994), to assess whether the repeal of INA § 212(c) by § 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") had an impermissibly retroactive effect on criminal aliens who, prior to IIRIRA's enactment, had pleaded guilty to an offense rendering them deportable.[4] See St. Cyr, 533 U.S. at 314-26.

---

[2] Subsequently, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009-546-724 (Sept. 30, 1996). Section 304(b) of IIRIRA repealed INA § 212(c), but only applies to deportation proceedings instituted on or after April 1, 1997 and therefore does not control Petitioner's case. See IIRIRA § 309, 110 Stat. 3009-625-627.

[3] The Government does not dispute Petitioner's satisfaction of these three eligibility requirements.

[4] In St. Cyr, the Supreme Court affirmed our decision that Congress did not intend for § 440(d) of AEDPA or § 304(b) of IIRIRA to apply retroactively, St. Cyr v. INS, 229 F.3d 406, 413-16 (2d Cir. 2000), and that applying these statutes to deny eligibility for § 212(c) relief to aliens who had previously entered plea agreements with the expectation of receiving such relief "would upset settled expectations and change the legal effect of prior conduct" and therefore have an impermissible retroactive effect. Id. at 418.

4

Finding that Congress did not clearly express its intent for IIRIRA to apply retroactively, the Court applied the presumption against retroactivity. Id. at 314-20.  It then turned to the second part of the Landgraf analysis:  whether the statute as applied had a retroactive effect. Id. at 320-25.

A statute operates retroactively where it "'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . .'" Id. at 321 (alteration in original) (quoting Landgraf, 511 U.S. at 269).  The determination that a statute has a retroactive effect should be guided by "'familiar considerations of fair notice, reasonable reliance, and settled expectations'" and "demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment'" Id. (quoting Martin v. Hadix, 527 U.S. 343, 357-58 (1999) (internal quotation marks omitted)).  In finding that IIRIRA would operate retroactively as to aliens who had pleaded guilty, the Court in St. Cyr emphasized the fact that plea agreements entailed a "quid pro quo" between the alien defendant and the Government. Id. at 321-22.  The alien likely surrendered his trial rights in the expectation that he would receive a reduced sentence preserving his eligibility for § 212(c) relief (i.e. a sentence of less than five years), whereas the Government received the benefit of "'promptly imposed punishment without the expenditure of prosecutorial resources.'" Id. at 321-23 (quoting Newton v. Rumery, 480 U.S. 386, 393 n.3 (1987)).  Based on substantial evidence that aliens were "acutely aware of the immigration consequences of their convictions," id. at 322, the Court found that aliens in deciding to forgo a trial and plead guilty "almost certainly relied" on the availability of § 212(c) relief. Id. at 325.  Therefore, IIRIRA's repeal of § 212(c) had a retroactive effect as applied to aliens within this class.

In Rankine v. Reno, 319 F.3d 93 (2d Cir. 2003), we held that IIRIRA's repeal of § 212(c) relief did not operate retroactively as to aliens who were convicted after a trial rather than a gulty plea. We noted in Rankine that "the issue of reliance has played a central role in the Supreme Court's and the circuit courts' reasoning with respect to the retroactivity of IIRIRA and AEDPA." Id. at 102. Unlike the decision to plead guilty, the decision to stand trial exhibited no detrimental reliance on § 212(c) relief. See id. at 99-100. In deciding to go to trial, an alien did not surrender any rights in reliance on the availability of § 212(c) relief, nor did he take any action from which he could assume a heightened expectation of receiving that relief in the future. See id. In fact, the aliens in Rankine, by standing trial, jeopardized their chances of obtaining § 212(c) relief because they risked receiving a sentence of five years or more, which would have disqualified them from such relief. See id. at 100; see also Swaby v. Ashcroft, 357 F.3d 156, 161-62 (2d Cir. 2004). Because an alien's decision to stand trial gave rise to no plausible claim that he altered his conduct in detrimental reliance on the availability of § 212(c) relief, the application of IIRIRA would have no retroactive effect.

One year later, in Restrepo, we refined our jurisprudence in this area. We held that the AEDPA did have a retroactive effect upon an alien who, following his pre-AEDPA trial conviction for an aggravated felony, decided to delay submitting an affirmative § 212(c) application in reliance on the reasonable expectation that he could file a stronger application at a later time. Restrepo, 369 F.3d at 633-38. The chances of obtaining § 212(c) relief increased with the passage of time because an alien's "proof of rehabilitation," the "nature, recency and seriousness" of his criminal record, and his "community ties" were relevant factors, among others, guiding an immigration judge's discretionary decision to grant relief. Id. at 634. Therefore, it was "perfectly understandable" that some aliens might decide to wait to apply for

6

such relief. Id. We found that,

> like the aliens in St. Cyr, who sacrificed something of value-their right to a jury trial, at which they could obtain outright acquittal-in the expectation that their guilty pleas would leave them eligible for [§] 212(c) relief, an alien like Petitioner also sacrificed something-the shot at obtaining [§] 212(c) relief by immediately filing an application-in order to increase his chances of obtaining such relief later on.

Id. at 634-35 (footnote omitted). Such a reliance interest would render the application of AEDPA impermissibly retroactive. However, we left open in Restrepo the question of whether such reliance would be presumed for all aliens within this class, as it was in St. Cyr for aliens who pleaded guilty, or whether we would require each alien to make an individualized showing of reliance.

This question was resolved in Wilson v. Gonzales, 471 F.3d 111, 122 (2d Cir. 2006). There, we recognized the lack of record evidence that aliens who refrained from affirmatively applying for § 212(c) relief "almost certainly relied" in the manner described in Restrepo and we declined to adopt a categorical presumption of such reliance. Id. at 122 (internal quotation marks omitted). "Nevertheless," we stated, "Restrepo requires us to recognize the potential validity of [petitioner's] individualized reliance argument." Id. We therefore adopted the rule, propounded by the Government, that aliens asserting a Restrepo claim must make an individualized showing of reliance before an immigration judge in order to prove that the AEDPA had a retroactive effect upon them. Id.

**Discussion**

A. Exhaustion

As a preliminary matter, the Government claims that we may not entertain

7

Petitioner's retroactivity claim because he did not raise a Restrepo theory of reliance before the agency and thereby failed to preserve the issue for judicial review. See, e.g., Lin Zhong v. United States Dep't of Justice, 480 F.3d 104, 117-25 (2d Cir. 2007). In Restrepo, we indicated that this claim of reliance was a subsidiary legal argument adequately exhausted by a general challenge to the AEDPA's retroactivity that Petitioner had raised in his habeas petition. 369 F.3d at 633 n.10. To the extent that our analysis in Restrepo was dictum because the Government seemed to waive any failure-to-exhaust defense, see id., we adopt that analysis in this case. Petitioner argued before the immigration judge and the BIA that applying the AEDPA to bar his eligibility for § 212(c) relief would be impermissibly retroactive under St. Cyr. This exhausted his retroactivity claim, and it is within our broad discretion to consider new subsidiary theories of reliance offered to support that claim. In view of the fact that Restrepo was not decided until after Petitioner challenged the AEDPA's retroactivity before the agency, we will exercise our discretion to consider his assertion of Restrepo reliance. See id.

B. Retroactivity

Petitioner contends that his decision to delay seeking § 212(c) relief, as well as his decisions to stand trial and to appeal his conviction, were guided by statements made by the state trial judge regarding the immigration consequences of the charges against him. He asserts that he may have made a decision to refrain from affirmatively applying for § 212(c) relief in reliance on his belief that he could submit a stronger application at a later time. This is a claim that, under our decision in Restrepo, would make § 440(d) of the AEDPA impermissibly retroactive as applied to him. Petitioner requests that we remand his case so that he can attempt to make an individualized showing of Restrepo reliance before an immigration judge pursuant to

8

Wilson.

The Government claims that Petitioner does not fall within the class of aliens who may benefit from Restrepo. Petitioner's March 1996 conviction was not deemed final for immigration purposes until July 1, 1998, when direct appellate review of it was exhausted. See Marino v. INS, 537 F.2d 686, 691-92 (2d Cir. 1976) (holding that a conviction is not final under the INA "until direct appellate review . . . has been exhausted or waived"). Consequently, the Government argues, there was no point in time between Petitioner's conviction and the AEDPA's effective date when he could have affirmatively applied for § 212(c) relief. Therefore, the argument goes, Petitioner could not have made any pre-AEDPA decision to delay an affirmative application that would give rise to the reliance interest recognized in Restrepo. As a result, according to the Government, Petitioner's only claim is that his decision to appeal demonstrated reliance, a claim which the Government contends is foreclosed by our decision in Rankine.

This case differs from Restrepo and Wilson only in the fact that Petitioner's pre-AEDPA trial conviction was on appeal, and therefore not final, when the AEDPA took effect. As a consequence, the conviction could not have served as a ground for Petitioner's deportation at any time prior to the AEDPA's effective date. We cannot agree, however, with the Government's contention that the non-final status of Petitioner's conviction prior to the AEDPA's effective date precludes him from raising a Restrepo claim of reliance. Following his conviction, Petitioner could have applied affirmatively for § 212(c) relief. Such an application simply would have required him to waive his rights to appellate review in order to finalize his conviction. Petitioner, like the petitioners in Restrepo, may have forgone the opportunity to

9

immediately apply for § 212(c) relief in reliance on his expectation that he could file a stronger application at a later date. Although it is possible that, immediately after his conviction, Petitioner did not consider an affirmative § 212(c) application at all, it would be inconsistent with our approach in Wilson to adopt a categorical presumption of non-reliance.

Contrary to the Government's assertion, Rankine does not control the instant petition. In Rankine, we held that an alien's decision to go to trial did not demonstrate reliance on the availability of § 212(c) relief because such a decision involved no conduct or surrender of rights from which an alien could assume a heightened expectation of obtaining § 212(c) relief in the future. 319 F.3d at 99-100. By deciding to stand trial, an alien relied merely on "a claim of innocence" and the "application of the criminal laws rather than on the availability of § 212(c) relief." Id. at 102. The Government argues that, similarly, an alien's decision to appeal demonstrates mere reliance on a claim of innocence or the invalidity of the underlying conviction. While this might be true, Petitioner does not claim that his reliance interest springs from his decision to appeal. Instead, his asserted reliance interest springs from his decision to delay filing an affirmative § 212(c) application after his conviction at trial. As we noted in Restrepo, this is a "separate and distinct reliance claim that Rankine did not have occasion to address since it arose outside the plea bargaining context." 369 F.3d at 636.

Moreover, the fact that Petitioner also chose to appeal his conviction does not prevent him from raising a Restrepo claim of reliance. The decision to appeal a conviction, which suspends an alien's deportability and, hence, his eligibility for a § 212(c) discretionary waiver of deportation, until the conviction becomes final, is consistent with a decision to delay filing an affirmative § 212(c) application. By contrast, in Rankine we found that an alien's

10

decision to go to trial was inconsistent with "an intention to preserve [his] eligibility for relief under § 212(c)," in part because such an alien "risked forfeiting [his] eligibility completely at trial through the possibility of a sentence in excess of that allowable under § 212(c)." Rankine, 319 F.3d at 100.

Therefore, we hold that § 212(c) relief remains available to an alien ordered removed for a pre-AEDPA conviction that was on appeal when the AEDPA took effect, provided that the alien can prove detrimental reliance of the type recognized in Restrepo. Under Wilson, Petitioner is entitled to try and prove his Restrepo claim of reliance before an immigration judge. See 471 F.3d at 122.

**Conclusion**

Accordingly, the petition is GRANTED and the case REMANDED to the BIA for further remand to an immigration judge to determine whether Petitioner can make an individualized showing of reliance on the continued availability of § 212(c) relief.