**Alvaro ARENAS–YEPES, Petitioner,**

**v.**

---

**112**

**Alberto R. GONZALES,\* Attorney General of the United States, Respondent.**

**Docket No. 03–4200.**

United States Court of Appeals, Second Circuit.

Argued: June 14, 2005.

Decided: Aug. 25, 2005.

---

\* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States. *See* Fed. R.App. P. 43(c)(2).

---

Roberto Tschudin Lucheme, Glastonbury, CT, for Petitioner.

Andrew Sparks, Assistant United States Attorney (Gregory F. Van Tatenhove, United States Attorney for the Eastern District of Kentucky, on the brief), United States Attorney's Office for the Eastern District of Kentucky, Lexington, KY, for Respondent.

Before: CABRANES and RAGGI, Circuit Judges, and SAND, District Judge.**

JOSÉ A. CABRANES, Circuit Judge.

Petitioner Alvaro Arenas–Yepes petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal and finding him statutorily ineligible for suspension of deportation. Petitioner asserts, *inter alia*, that because

he received a charging document—namely, an order to show cause—prior to the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. No. 104–208, 110 Stat. 3009 (1996) ("IIRIRA"), he is subject to the "transitional rules" of IIRIRA and therefore eligible for suspension of deportation. *See* 8 U.S.C. § 1254(a)(1) (repealed 1996).

The BIA disagreed, holding that petitioner's receipt of an order to show cause prior to the effective date of IIRIRA did not commence deportation proceedings against him and that petitioner was therefore statutorily ineligible for suspension of deportation. Because we hold that the BIA correctly found petitioner ineligible for suspension of deportation, we deny the petition for review.

## BACKGROUND

Petitioner, a native and citizen of Colombia, entered the United States on a six-month visitor's visa in 1989. He continued living in the United States after his visa expired. On March 28, 1997, petitioner was served with an order to show cause ("OSC"). The INS, however, failed to file the OSC with the immigration court.[1] On

---

** The Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

1. At oral argument, petitioner suggested for the first time that his OSC may have been filed with the immigration court prior to the effective date of IIRIRA but that, due to a scrivener's error, the administrative record did not reflect the timely filing. At our request, the government searched for any evidence that petitioner's OSC was filed prior to April 1, 1997. The government found no evidence that the OSC had *ever* been filed with the immigration court and, in a letter dated June 28, 2005, represented to us that "the certified administrative record represents a complete record of the Petitioner's proceedings."

In a response dated July 21, 2005, petitioner continued to assert that "[a]ll the evidence

points to a scrivener's error or its equitable or legal equivalent." Petitioner's own shorthand summary of an immigration judge's remarks reveals, however, that petitioner "was served with an ... order to show cause[, but] ... for whatever reason[,] it appears that that [order] did not get served on the court."

Because petitioner conceded to the IJ, the BIA, and to this Court in his appellate brief that the OSC was never filed with the immigration court, and because there is no evidence in the record to the contrary, we cannot now consider petitioner's argument that the OSC may have been filed with the immigration court prior to April 1, 1997. *See* 8 U.S.C. § 1252(d)(1); *Cervantes–Ascencio v. U.S. INS*, 326 F.3d 83, 87 (2d Cir.2003) (recognizing that § 1252(d)(1)'s "exhaustion requirements [require a petitioner] to raise issues to the BIA in order to preserve them

September 4, 1998, seventeen months after the April 1, 1997 effective date of IIRIRA, petitioner was served with a new charging document, a notice to appear ("NTA"). The NTA was filed with the immigration court on September 4, 1998.

On November 9, 1999, an immigration judge ("IJ") found petitioner removable and granted petitioner's request for voluntary departure. Petitioner appealed the IJ's order to the BIA, arguing that he was statutorily eligible for suspension of deportation, a form of discretionary relief previously available under the Immigration and Nationality Act of 1952 ("INA"). *See* 8 U.S.C. § 1254(a)(1) (repealed 1996) (providing that an alien may be eligible for suspension of deportation if, *inter alia*, he has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of his suspension of deportation application). Petitioner claimed that he fell within the scope of the pre-IIRIRA provisions of the INA because he received an OSC prior to the April 1, 1997 effective date of IIRIRA.

The BIA disagreed, finding that, because petitioner's OSC was not filed with the immigration court prior to the onset of IIRIRA, petitioner's deportation proceedings did not "commence[ ]" until after April 1, 1997. Accordingly, the BIA found petitioner statutorily ineligible for suspension of deportation. The BIA also found him ineligible for cancellation of removal because he had not been in the United States for a continuous period of ten years

prior to being served with an NTA as required by 8 U.S.C. § 1229b(b).[2]

Petitioner presents two issues to this Court: (1) whether the BIA improperly found him statutorily ineligible for suspension of deportation based on its finding that no charging document was filed against him in the immigration court prior to the April 1, 1997 effective date of IIRIRA, and (2) whether the BIA impermissibly applied the "stop-time" provision of 8 U.S.C. § 1229b(d)(1)[3] retroactively when reviewing petitioner's claim for cancellation of removal.

## STANDARD OF REVIEW

■ "We review the BIA's underlying conclusions of law *de novo*, with the caveat that the BIA's interpretations of ambiguous provisions of the INA are owed substantial deference unless 'arbitrary, capricious, or manifestly contrary to the statute.'" *Mardones v. McElroy*, 197 F.3d 619, 624 (2d Cir.1999) (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)) (citation omitted).

## DISCUSSION

Between March 1997, when petitioner was served with an OSC, and September 1998, when petitioner was served with an NTA, IIRIRA became effective. Under IIRIRA, removal proceedings against an alien are initiated by serving that individu-

---

for judicial review"); *see also* 8 U.S.C. § 1252(b)(4)(A) (providing that "the court of appeals shall decide the petition [for review] only on the administrative record on which the order of removal is based").

**2.** 8 U.S.C. § 1229b(b) provides that an alien may be eligible for cancellation of removal if, *inter alia*, he "has been physically present in the United States for a continuous period of

not less than 10 years immediately preceding the date of [his cancellation of removal] application."

**3.** 8 U.S.C. § 1229b(d) provides: "For purposes of this section, any period of . . . . continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear . . . ."

al and the immigration court with an NTA (as opposed to the pre-IIRIRA charging document, an OSC). *See* 8 U.S.C. § 1229(a)(1). IIRIRA also repealed the form of relief petitioner seeks here, "suspension of deportation," replacing it with a new form of discretionary relief, "cancellation of removal." *See* IIRIRA § 304(a)(3), 110 Stat. at 3009–598 to –606 (amending the INA to add, *inter alia*, § 240A(a) & (b), codified at 8 U.S.C. § 1229b(a) & (b)). *See generally Medina v. Gonzales*, 404 F.3d 628, 634 n. 4 (2d Cir.2005) (describing IIRIRA's amendments to the INA); *Rojas–Reyes v. INS*, 235 F.3d 115, 120 (2d Cir.2000) (same).

In addition to these changes in nomenclature, IIRIRA imposed stricter eligibility requirements for the granting of discretionary relief. Under IIRIRA, a non-permanent resident alien living in the United States becomes eligible for cancellation of removal only after a period of ten years of continuous physical presence. *See* 8 U.S.C. § 1229b(b). By contrast, in order to establish eligibility for suspension of deportation prior to IIRIRA, such an alien was only required to show that he had been physically present in the United States for a continuous period of seven years. *See* 8 U.S.C. § 1254(a)(1) (repealed 1996).

With the enactment of IIRIRA, Congress also created a new method for calculating the period of time an alien has been present in the United States. Under the so-called "stop-time" provision, the period of time to be counted towards the determination of whether an alien has met the continuous physical presence requirement necessary to be eligible for relief from deportation (or removal) ends when the alien is served with a charging document.[4] *See* 8 U.S.C. § 1229b(d)(1).

██ Notably, although the stop-time provision of IIRIRA is fully retroactive, *see Rojas–Reyes*, 235 F.3d at 120–21, other aspects of the permanent rules of IIRIRA do not apply retroactively to immigration cases that commenced prior to IIRIRA's effective date. Specifically, under IIRIRA's "transitional rules," *see* IIRIRA § 309(c), 110 Stat. at 3009–625, aliens who were already in deportation proceedings prior to the effective date of IIRIRA remain eligible for suspension of deportation relief. *See Baltazar–Alcazar v. INS*, 386 F.3d 940, 943–44 n. 1 (9th Cir.2004) ("Under the transitional rules, an applicant may apply for the pre-IIRIRA remedy of suspension of deportation if deportation proceedings against her were commenced before April 1, 1997.") (internal quotation marks omitted); *see also Rojas–Reyes*, 235 F.3d at 120 ("The IIRIRA generally applies only to proceedings initiated on or after the statute's effective date of April 1, 1997."); *Henderson v. INS*, 157 F.3d 106, 117 (2d Cir.1998) ("The transitional provisions (which are not codified in the U.S.Code) control deportation proceedings started prior to April 1, 1997, in which the deportation order became administratively final after October 30, 1996.").

Petitioner's claim therefore depends upon whether his receipt in March 1997 of an OSC triggered the commencement of deportation proceedings against him. If it did, he is subject to IIRIRA's transitional rules and may apply for suspension of deportation. If it did not, he is subject to IIRIRA's permanent provisions and is ineligible for suspension of deportation. *See Gelman v. Ashcroft*, 372 F.3d 495, 497–98

---

4. Prior to IIRIRA, aliens "accrued time toward the 'continuous physical presence in the United States' requirement until they applied for suspension of deportation. In short, the commencement of deportation proceedings had no effect on this accrual." *Ram v. INS*, 243 F.3d 510, 513 (9th Cir.2001).

(2d Cir.2004) (recognizing that IIRIRA's "permanent provisions" apply to aliens whose removal proceedings were commenced after April 1, 1997).

### 1. Commencement of Proceedings

■ The applicable regulations provide that proceedings "commence" against an alien when a charging document is first filed with the immigration court. *See* 8 C.F.R. § 1003.14(a). Similarly, under the pre-IIRIRA regulations, "[e]very proceeding to determine the deportability of an alien in the United States [was] commenced by the filing of an Order to Show Cause with the Office of the Immigration Judge." 8 C.F.R. § 242.1(a) (repealed). Thus, it has never been the case, under either the current IIRIRA regulations or the pre-IIRIRA regulations, that the mere issuance or service on an alien of a charging document "commenced" immigration proceedings against the alien.

In his brief, petitioner does not appear to challenge the Attorney General's authority to promulgate 8 C.F.R. § 1003.14. Nor does he question that the regulation is anything other than a sound exercise of the Attorney General's discretion. Instead, petitioner urges that, under *Morales–Ramirez v. Reno*, 209 F.3d 977 (7th Cir.2000), the fact that "immigration officials did not file the charging document with an immigration court until after [IIRIRA] does not prevent Petitioner from continuing to have relief under prior law ...." Pet'r's Br. at 5 (citing *Morales–Ramirez*, 209 F.3d at 983).

Petitioner's reliance on *Morales–Ramirez* is misplaced. In *Morales–Ramirez*, the Seventh Circuit actually concluded that "exclusion proceedings were *not* 'pending' against [the petitioner] at the time that the relevant provisions of IIRIRA came into force" because "[t]he INS did not file the appropriate charging document with the immigration court until after April 1, 1997." *Morales–Ramirez*, 209 F.3d at 983 (emphasis added). In the instant case, as in *Morales–Ramirez*, a charging document against petitioner was not filed with the immigration court prior to IIRIRA's effective date. Consequently, as the government contends, removal proceedings did not "commence" against petitioner under the applicable regulations until September 4, 1998—a full seventeen months after the effective date of IIRIRA—when the NTA served upon petitioner was simultaneously filed with the immigration court.[5]

Petitioner does not quarrel with the regulations, and, even if he did, the decision of the Attorney General to peg the commencement of proceedings against an alien to the filing of a charging document in the immigration court would certainly be entitled to deference. *See Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778. We therefore apply 8 C.F.R. § 1003.14 to petitioner's case and hold that (1) removal proceedings did not commence against him until September 4, 1998; (2) petitioner is subject to the permanent rules of IIRIRA, which specify eligibility requirements for cancellation of removal; and (3) petitioner is therefore statutorily ineligible for suspen-

---

**5.** In his brief, petitioner also relies on *Cunningham v. U.S. Attorney General*, 335 F.3d 1262 (11th Cir.2003), *Alanis–Bustamante v. Reno*, 201 F.3d 1303 (11th Cir.2000), and *Wallace v. Reno*, 194 F.3d 279 (1st Cir.1999). Because all of these cases dealt with criminal aliens, they are not applicable here. *See Costa v. INS*, 233 F.3d 31, 35 (1st Cir.2000) (*"Wallace* is inapposite here. There, we were con-

cerned that once criminal proceedings against an alien had begun, the existing rules applicable to suspension of deportation likely would command his attention and foster reliance during his decision-making in connection with the pending criminal charges.... The instant case, which involves a non-criminal alien, is a horse of a different hue.").

sion of deportation. *See Dandan v. Ash-croft*, 339 F.3d 567, 575–76 (7th Cir.2003) (recognizing that a petitioner who received an unfiled OSC prior to the effective date of IIRIRA was ineligible for suspension of deportation relief because deportation proceedings against him did not commence until the subsequent filing of a charging document with the immigration court); *Jimenez–Angeles v. Ashcroft*, 291 F.3d 594, 600 (9th Cir.2002) (holding that the petitioner was subject to IIRIRA's permanent provisions—and therefore was statutorily ineligible for deportation—because deportation proceedings were not commenced against her prior to the effective date of IIRIRA).

## 2. Stop–Time Provision

■ Petitioner's other claim, that IIRIRA's stop-time provision is impermissibly retroactive as applied to him, is similarly without merit. In *Rojas–Reyes*, we specifically stated that retroactive application of "the stop-time rule of 8 U.S.C. § 1229b(d)(1) and the transitional stop-time rule of IIRIRA § 309(c)(5) are rationally related to the achievement of a legitimate government purpose" and found both to be consistent with the constitutional guarantees of due process of law and the equal protection of the laws. 235 F.3d at 123–24. More recently, in *Karageorgious v. Ashcroft*, 374 F.3d 152, 155–56 (2d Cir. 2004), we upheld the retroactive application of IIRIRA's elimination of suspension of deportation relief. Specifically, we held that for those persons who had not forfeited substantive rights (for example, by pleading guilty to a felony) based on some expectation of eligibility for immigration benefits under the pre-IIRIRA regime, repeal of suspension of deportation had no impermissible retroactive effect "because it [did] not attach any new legal consequences to petitioners' pre-IIRIRA conduct." *Id.* at 156.

Similarly, here, IIRIRA's imposition of a "stop time" on the qualifying period of petitioner's continuous physical presence in the United States, 8 U.S.C. § 1229b(d)(1), does not attach any new legal consequences to petitioner's prior conduct or affect any of petitioner's vested rights. Therefore, its retroactive application has no impermissible retroactive effect. *Cf. INS v. St. Cyr*, 533 U.S. 289, 321, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (recognizing that IIRIRA had an impermissible retroactive effect insofar as it deprived a convicted alien of his eligibility for suspension of deportation because alien had pleaded guilty—and thereby surrendered substantive rights—based on his expectation that by doing so he would remain eligible for immigration benefits). And because petitioner has not suggested to us, and did not argue before the BIA, that he would have acted differently but for the enactment of IIRIRA's stop-time provision, his argument that § 1229b is impermissibly retroactive as applied to him must fail. *See In re Enter. Mortgage Acceptance Co. Sec. Litig.*, 391 F.3d 401, 409 (2d Cir.2004) (recognizing that a statute has "an impermissible retroactive effect" to the extent that it " 'takes away or impairs *vested* rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past' ") (emphasis added) (quoting *Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.D.N.H. 1814) (No. 13,156) (Story, J.)).

## CONCLUSION

For the reasons stated above, we hold that (1) petitioner's receipt of an OSC in March 1997 did not trigger the commencement of deportation proceedings against him; (2) petitioner is statutorily ineligible

for suspension of deportation, and is instead subject to IIRIRA's permanent cancellation of removal provisions; and (3) the "stop-time" provision of 8 U.S.C. § 1229b(d)(1) has no impermissible retroactive effect as applied to petitioner.

Accordingly, we deny the petition for review.