STRAUB, Circuit Judge,
concurring.
I write separately because I disagree with the majority that retroactive application of the stop-time rule to Zuluaga’s case “did not change the consequence of petitioner’s criminal act.” Nevertheless, because Zuluaga cannot meet this Circuit’s requirement that he show actual, detrimental reliance on the prior law in order to demonstrate impermissible retroactive effect (a requirement that, as explained in more detail below, is the subject of considerable controversy and may be ripe for reexamination or review), I must concur in the judgment.
I.
I agree with the majority that Congress has not expressly commanded that the criminal-offense stop-time rule in 8 U.S.C. § 1229b(d)(l)(B) be applied retroactively so that we must address Langraf step two. It is at the determination of whether the new stop-time rule attaches adverse legal consequences or new disabilities to past acts where the majority and I part ways.
In concluding that retroactive application of the stop-time rule “did not change the consequence of petitioner’s criminal act,” the majority reasons: “The instant petitioner committed the offense before meeting the seven-year residency requirement for suspension of deportation, he became eligible for deportation.” On this score, the majority is simply wrong as a matter of law. Section 237(a)(2)(B)(i) of the INA, under which Zuluaga was charged with removability, states, in relevant part: “Any alien who at any time after admission has been convicted of a violation of ... any law ... relating to a controlled substance ... is deportable.” 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added); see also Thom v. Ashcroft, 369 F.3d 158, 170 (2d Cir.2004) (Underhill, J., dissenting) (“The instant before the jury returns its verdict, the defendant is subject to no immigration consequence; the instant after, he is subject to an immigration consequence.”), cert. denied, 546 U.S. 828, 126 S.Ct. 40, 163 L.Ed.2d 75 (2005); Rankine v. Reno, 319 F.3d 93, 99 (2d Cir.) (“Unless and until they were convicted of their underlying crimes, the petitioners could not be deported.” (emphasis added)), cert. denied, 540 U.S. 910, 124 S.Ct. 287, 157 L.Ed.2d 199 (2003); St. Cyr v. INS, 229 F.3d 406, 418 (2d Cir.2000) (“[I]t is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief.” (internal quotation marks omitted)), aff'd, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); accord Atkinson v. Att’y Gen., 479 F.3d 222, 231 n. 8 (3d Cir.2007) (“[Ajbsent a legal determination of guilt, the alien is not subject to deportation or in need of section 212(c) relief.”). Accordingly, at the time Zuluaga committed his offense, he was not deporta-ble, as the majority suggests. It was only after his conviction that Zuluaga became deportable. And at the time he was convicted, and ultimately placed into removal proceedings, Zuluaga had clearly met the seven-year residency requirement.
Under the prior law, therefore, the timing of the commission of his offense posed no bar whatsoever to Zuluaga’s ability to *378 apply for a waiver of deportation, which he could do at any time before a final order of removal was entered, so long as that final order of removal was entered after he had acquired his seven years of residency, which in this case it clearly was. See Arenas-Yepes v. Gonzales, 421 F.3d 111, 115 n. 4 (2d Cir.2005) (“Prior to IIRIRA, aliens accrued time toward the continuous physical presence in the United States requirement until they applied for suspension of deportation. In short, the commencement of deportation proceedings had no effect on this accrual.” (emphasis added) (internal quotation marks omitted)). However, the new stop-time rule, retroactively applied, would prohibit Zuluaga from obtaining relief from removal from the time he committed the offense, regardless of when he was convicted, served with an NTA, or ordered removed. Retroactively applying the stop-time rule makes the timing of his offense determinative, and therefore attaches new and adverse legal consequences and new disabilities to past acts. See INS v. St. Cyr, 533 U.S. 289, 325, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).
The majority hinges its decision on the unlikely hypothetical possibility that Zu-luaga could have been convicted, placed into removal proceedings, and ordered removed, all within the one month after he committed the offense and before he acquired his seven years of residency.[1] A far more likely scenario reveals the majority’s flawed reasoning. Had Zuluaga been convicted of his April 1995 offense and placed into removal proceedings at any time between May 1995, when he accrued his seven years of residence, and April 1, 1997, the date IIRIRA became effective, Zuluaga unquestionably would have been eligible to apply for suspension of deportation. See 8 U.S.C. § 1182(c) (repealed 1996); Arenas-Yepes, 421 F.3d at 115 n. 4. Accordingly, the delay in “time required to bring an offender to justice” was just as much, if not more, a detriment to Zulua-ga’s case as it was a benefit.
In any event, resort to hypothetical scenarios is unnecessary here, because the events that actually transpired in Zu-luaga’s case demonstrate clearly that retroactive application of the stoptime rule imposed “new legal consequences” to Zu-luaga’s past conduct. St. Cyr, 533 U.S. at 321, 121 S.Ct. 2271. At the time Zuluaga was convicted and placed into removal proceedings, he would have been eligible to apply for suspension of deportation under the prior law, because he had clearly met the seven-year residency requirement. When the IJ retroactively applied the new stop-time rule to his pre-IIRIRA conduct, however, Zuluaga was stripped of that eligibility. I fail to see how retroactive application of the new stop-time rule did not impose a “new legal consequence[]” or “new disability,” St. Cyr, 533 U.S. at 321, 121 S.Ct. 2271, to a past act that Zuluaga was “helpless to undo,” Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 2432, 165 L.Ed.2d 323 (2006). See also Landgraf v. USI Film Prods., 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).
I therefore disagree with the majority’s view that retroactive application of the stop-time rule “did not change the consequence of petitioner’s criminal act.” Al *379 though IIRIRA did not change the impact of Zuluaga’s offense on the initial determination of deportability, it changed the consequence of the timing of his criminal act by eliminating the possibility of relief from removal that was previously available to him. See St. Cyr, 533 U.S. at 325, 121 S.Ct. 2271 (“There is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation.”). Accordingly, in my view, applying § 1229b(d)(1)(B) to Zu-luaga’s pre-IIRIRA offense attaches unforeseen, and severe, legal consequences to past conduct that cannot be undone. And since there is no clear indication in IIRI-RA that Congress “affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits,” Landgraf, 511 U.S. at 272-73, 114 S.Ct. 1483, the presumption against retroactivity counsels against allowing § 1229b(d)(1)(B) to apply to past conduct. Nevertheless, as explained below, because Zuluaga cannot demonstrate the type of detrimental reliance required by our precedent, I must concur in the majority’s finding that he cannot demonstrate impermissible retroactive effect.
II.
Our post-Rt Cyr decisions make clear that, even in cases where a new immigration law attaches new legal consequences to past conduct, in our Circuit, petitioners seeking to show that the new law was impermissibly applied to their case retroactively must show that they detrimentally relied on the prior law.
[1] In St. Cyr, the Supreme Court was asked to decide whether the repeal of § 212(c) relief could be retroactively applied to petitioners who had pled guilty to their removable crimes while § 212(c) was still in effect. Although the Court found that the provision could not be retroactively applied, emphasizing that St. Cyr, and many others in his situation, had pled guilty and waived their right to a trial in reliance on the continued availability of § 212(c) relief, the Court stopped short of stating that such reliance must always be shown in order to sustain a finding of impermissible retroactivity. Nevertheless, in Rankine, a panel of this Court, reasoning that it could not “ignore the strong signals sent in [the Supreme Court’s decision] that aliens who chose to go to trial are in a different position with respect to IIRIRA than aliens like St. Cyr who chose to plead guilty,” held that because aliens who were convicted at trial before repeal of § 212(c) could not show that they “detrimentally changed [their] position in reb-anee on continued eligibility for § 212(c) relief,” the new law was not impermissibly retroactive as appbed to them. 319 F.3d at 99-100. Reasoning that what such petitioners “truly relied upon was their claim of innocence,” the panel found it “difficult to conclude, as we must to find impermissible retroactivity, that the petitioners chose to go to trial in reliance on the availability of § 212(c) relief.” Id. at 100-02 (emphasis added). Significantly, after finding that petitioners could not show detrimental reliance on the prior law, the analysis ended. This Court did not go on to examine “whether the new provision attaches new legal consequences to events completed before its enactment,” Landgraf, 511 U.S. at 269-70, 114 S.Ct. 1483, which it most certainly did.[2] Accordingly, in this case, although in my view applica *380 tion of the stop-time rule attaches new legal consequences to Zuluaga’s crime, Rankine forecloses relief. Under our precedent, in order to successfully argue that the rule is impermissibly retroactive as applied to his case, Zuluaga must show that he detrimentally relied on the prior rule, which, as shown below, he cannot do.
Following Rankine, several decisions from this Court have further made clear that we require a showing of actual detrimental reliance. See, e.g., in chron. order, Swaby v. Ashcroft, 357 F.3d 156, 162 (2d Cir.2004) (“We hold that the decision to go to trial, as a matter of law, forecloses any argument of detrimental reliance on the availability of § 212(c) relief, and that IIR-IRA’s repeal of § 212(c) is not impermissi-bly retroactive in its application to petitioner.”); Restrepo v. McElroy, 369 F.3d 627, 637 (2d Cir.2004) (finding that petitioners who forwent “filing an affirmative [§ 212(c)] application in the hope of building a stronger record and filing at a later date” could show detrimental reliance under Rankine); Boatswain v. Gonzales, 414 F.3d 413, 419 (2d Cir.) (“[In Rankine], we looked for some indication of a quid pro quo, or reasoned exchange, wherein the individual whose settled expectations were in question relied on a potential benefit in structuring his conduct.”), cert. denied, 546 U.S. 945, 126 S.Ct. 445, 163 L.Ed.2d 338 (2005); Wilson v. Gonzales, 471 F.3d 111, 122 (2d Cir.2006) (“The precedential evolution from St. Cyr, to Rankine, to Restrepo, through to Femandez-Vargas, makes clear that the continued availability of § 212(c) relief depends on the reliance of those now seeking the benefit of that relief.”); [3] Walcott v. Chertoff, 517 F.3d 149, 155 (2d Cir.2008) (“[W]e hold that § 212(c) relief remains available to an alien ordered removed for a pre-AEDPA conviction that was on appeal when the AEDPA took effect, provided that the alien can prove detrimental reliance of the type recognized in Restrepo.... [T]he proper inquiry is whether, prior to the AEDPA’s passage, an alien reasonably and detrimentally conformed his conduct to the then-prevailing law by making choices intended to preserve or heighten his chances of receiving § 212(c) relief.”); Singh v. Mukasey, No. 07-1688-ag, 520 F.3d 119, 124-25 (2d Cir.2008) (stating that “Wilson requires” a “showing of detrimental reliance”).[4]
*381 Moreover, we have further held that, as a general matter, petitioners must show that their reliance was individualized and subjective, not merely objective. See Wilson, 471 F.3d at 122. In Restrepo, while we found that petitioners who forwent “filing an affirmative [§ 212(c)] application in the hope of building a stronger record and filing at a later date” could show the type of detrimental reliance required by Rankine, we left open the question of whether an alien “must make an individualized showing that he decided to forgo an opportunity to file for 212(c) relief in reliance on his ability to file at a later date ... or whether, instead, a categorical presumption of reliance by any alien who might have applied for 212(c) relief when it was available, but did not do so, is more appropriate.” 369 F.3d at 637-39. In Wilson, we answered this question, holding that, as a general matter, the former is required. 471 F.3d at 122.
Here, Zuluaga cannot show the type of individualized, detrimental reliance on pre-IIRIRA law required by Rankine and Wilson. As the majority correctly states, the operative event in Zuluaga’s case is his commission of the crime. However, any argument that Zuluaga committed the crime in reliance on his future eligibility for suspension of deportation under pre-IIRIRA law is foreclosed by our precedent. In Domond, relying on our decision in St. Cyr, we stated that “it would border on the absurd to argue that [the petitioner] would have decided not to commit a crime if he had known that he ... could face deportation without the availability of a discretionary waiver of deportation.” 244 F.3d at 86 (alterations and internal quotation marks omitted); see also Khan, 352 F.3d at 524-25 (holding that Domond remains good law after the Supreme Court’s St. Cyr decision and explicitly citing Do-mond with approval on this point).[5] Ac *382 cordingly, Zuluaga cannot-show that application of the stop-time rule to his case was impermissible under our precedent.[6]
III.
The requirement that petitioners arguing impermissible retroactivity show individualized, detrimental reliance on the pri- or law is the subject of a considerable amount of controversy among, within, and surrounding the courts of appeals.
As various courts have noted, the requirement has not been imposed by, and in fact appears to run afoul of, Supreme Court retroactivity case law. In Landgraf, the Supreme Court was asked to decide whether provisions of the Civil Rights Act of 1991 permitting a plaintiff to recover damages for unlawful discrimination could be retroactively applied to the actions of Barbara Landgraf s employer. The Court found that “the new compensatory damages provision would operate ‘retrospectively’ if it were applied to conduct occurring before [enactment of the 1991 Act]” because it would “attach an important new legal burden to that conduct.” 511 U.S. at 282-83, 114 S.Ct. 1483. As the Third Circuit later observed, “[i]n determining that the amendment did not apply to pending cases, the Court did not base its decision on the specific conduct of Landgraf s employer or on any reliance that either Land-graf or her employer may have had on the state of the law when discriminatory conduct occurred.” Atkinson, 479 F.3d at 228. “Instead, the Court made a general analysis of the impact of the amendment, finding retroactivity improper because the amendment instituted a legal change that attached a new legal burden to the proscribed conduct.” Id.; see also Hem v. Maurer, 458 F.3d 1185, 1192 (10th Cir.2006) (“The facts of Landgraf itself belie any notion that the Supreme Court requires a showing of actual reliance as a prerequisite to sustain a retroactivity challenge.”). The Landgraf Court accordingly affirmed that “ ‘every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.’ ” 511 U.S. at 269, 114 S.Ct. 1483 (quoting Society for Propagation of the Gospel v. Wheeler, 22 F. Cas. 756, 767 (C.C.N.H.1814) (No. 13,156) (Story, J.)).
Similarly, in Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), the Supreme Court held that a 1986 amendment to the False Claims Act (FCA), which eliminated certain defenses to suits under the FCA, could not be retroactively applied to suits based on pre-en-actment conduct. Id. at 947-48, 117 S.Ct. 1871. “There [was], however, no consideration in Hughes of whether Hughes Aircraft, in particular, or any defendant, in general, in an FCA action might have relied on the former law in conducting business with the government.” Atkinson, 479 F.3d at 229. “It was the new legal burden imposed on events past, rather than the *383 reliance on the former law by the person affected, which was the basis for holding that the 1986 amendment would not be applied retroactively.” Id.; see also Hem, 458 F.3d at 1193 (“Hughes Aircraft ... similarly failed to impose any reliance requirement on retroactivity challenges.”); Olatunji v. Ashcroft, 387 F.3d 383, 391 (4th Cir.2004) (explaining that Hughes Aircraft confirms that “Landgraf did not intend to impose a requirement of reliance” because there the Court held that “elimination of certain defenses to qui tam suits under the False Claims Act could not be applied retroactively to Hughes Aircraft ... without even a single ivord of discussion as to whether Hughes Aircraft — or, for that matter, similarly situated government contractors — had relied on the eliminated defense to its detriment”). Moreover, the Hughes Aircraft Court stated that Land-graf s description was not “the exclusive definition of presumptively impermissible retroactive legislation,” and thus, each of the identified effects is “a sufficient, rather than a necessary, condition for invoking the presumption against retroactivity.” 520 U.S. at 947, 117 S.Ct. 1871.
Recent Supreme Court cases in the immigration context do not cast doubt on this interpretation. In St. Cyr, as stated above, the Supreme Court admittedly considered the fact that aliens had relied on the availability of § 212(c) relief in deciding to plead guilty; however, the Court stopped short of stating that such reliance was required for a finding of impermissible retroactivity. See Olatunji, 387 F.3d at 393 (stating that “St. Cyr did not purport to add a subjective reliance requirement,” but rather that the Court in St. Cyr emphasized petitioner’s reliance because it indicated “ ‘an obvious and severe retroactive effect.’ ” (citing St. Cyr, 533 U.S. at 325, 121 S.Ct. 2271)). And, in Femandez-Vargas, the Supreme Court held that an IIRIRA provision for the reinstatement of removal orders against aliens illegally reentering could be permissibly applied to aliens who reentered the United States before IIRIRA became effective. 126 S.Ct. at 2434. However, the Court based its holding not on reliance grounds, but on the finding that the new law does not impose new legal consequences on past conduct that could not be undone. The Court reasoned, “[i]t is ... the alien’s choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo.” Id. at 2432; see also Hem, 458 F.3d at 1198-99 (“The problem with Fernandez-Vargas’ Landgraf argument, the majority reasoned, was that § 241(a)(5) did not affect his past conduct.”). As the Tenth Circuit observed, “[cjonsistent with ... the Landgraf eases, the [Femandez-Vargas] Court never converts ‘detrimental reliance’ on prior law into a prerequisite for sustaining a retroactivity claim. Rather, the ret-roactivity inquiry remains the two part inquiry established in Landgraf, together with a strong presumption against retroactive application, with no discussion of reliance even appearing until the Court summarizes the pertinent facts of St. Cyr.” Hem, 458 F.3d at 1198-99 (citing Fernandez-Vargas, 126 S.Ct. at 2428); see also United States v. De Horta Garcia, 519 F.3d 658, 664 (7th Cir.2008) (Rovner, J., concurring) (“[T]here are indeed references to reliance in the Supreme Court’s retroactivity precedents. That is not surprising, for reliance always looms in the background as a reason explaining the Court’s longstanding presumption that when Congress enacts a new law, it does not intend for the law to apply retroactively unless it makes that intent clear.... But no Supreme Court decision requires or turns on proof that the party contesting *384 retroactive application of new legislation actually relied to his detriment on prior law in setting his own course of conduct.” (internal citations omitted)).
While some courts of appeals have found the Supreme Court doctrine to be clear on this matter, other courts have disagreed as to whether detrimental reliance should be a requirement at all, and if so, whether subjective, individualized reliance must be shown as opposed to merely objective reliance. The Third and Fourth Circuits, for example, have stated that no showing of reliance is required. See, e.g., Atkinson, 479 F.3d at 281 (“[W]e conclude that reliance is but one consideration in assessing whether a statute attaches new legal consequences to past events.”); Olatunji, 387 F.3d at 388 (“[W]e hold that reliance (whether subjective or objective) is not a requirement of impermissible retroactivity....”).
In rejecting a reliance requirement, the Fourth Circuit in Olatunji focused on the presumption against retroactivity set forth in Landgraf, reasoning, “we do not believe that subjective reliance is, or ought to be, relevant to the question of whether a particular statute is impermissibly retroactive, as such is neither dictated by Supreme Court precedent nor related to the presumption of congressional intent underlying the bar against retroactivity.” 387 F.3d at 389. The court further reasoned:
Whether the particular petitioner did or did not subjectively rely upon the prior statute or scheme has nothing whatever to do with Congress’ intent-the very basis for the presumption against statutory retroactivity. It is one thing to indulge in the supportable presumption that Congress intends its enactments not to operate retroactively; it is another altogether to indulge the quite different, and unsupported and unsupportable, presumption that Congress so intends, but only where the particular petitioning party can prove that he subjectively relied on the prior statute to his detriment. In other words, where Congress has apparently given no thought to the question of retroactivity whatever, there is no basis for inferring that Congress’ intent was any more nuanced than that statutes should not be held to apply retroactively. Anything more, in the face of complete congressional silence, is nothing but judicial legislation.
Id. at 394. Accordingly, relying on case law from the Third Circuit, the court concluded, “[wjhether a plaintiff did or did not rely on a prior statutory scheme is irrelevant to whether that scheme in fact has a retroactive effect on that plaintiff. ‘It is,’ as the Third Circuit has noted, ‘a strange “presumption” ... that arises only on so heightened a showing as actual reliance.’ ” Id. at 391 (quoting Ponnapula v. Ashcroft, 373 F.3d 480, 491 (3d Cir.2004)). Similarly, the Third Circuit in Atkinson relied on Supreme Court precedent and the presumption against retroactivity in concluding that no showing of reliance is required. See 479 F.3d at 231.
The Sixth, Ninth, and Tenth Circuits, in contrast, have stated that a showing of reliance is required, but these circuits only require a showing of objectively reasonable reliance. See, e.g., Thaqi v. Jenifer, 377 F.3d 500, 504 n. 2 (6th Cir.2004) (“We note that, under St. Cyr, the petitioner need not demonstrate actual reliance upon the immigration laws in order to demonstrate an impermissible retroactive effect; he need only be among a class of aliens whose guilty pleas ‘were likely facilitated’ by their continued eligibility for § 212(c) relief.”); Camins v. Gonzales, 500 F.3d 872, 884 (9th Cir.2007) (“In determining whether the attachment of new legal consequences to past actions conflicts with familiar considerations of fair notice, reason *385 able reliance, and settled expectations, we require that reliance on the prior law would have been objectively reasonable under the party’s circumstances.” (citations and internal quotation marks omitted)); Hem, 458 F.3d at 1187 (“[W]e conclude that an objective showing of reliance is the appropriate rule.”).
The Tenth Circuit’s decision in Hem extensively sets forth the reasoning for requiring a petitioner to show objective reliance — as opposed to the individualized or actual detrimental reliance required in this Circuit. Compare 458 F.3d at 1197, with Wilson, 471 F.3d at 122. As set forth above, and similar to the Third and Fourth Circuits, the court in Hem reasoned that the Supreme Court has never required a showing of actual reliance. See Hem, 458 F.3d at 1197 (“[I]n none of the recent retroactivity cases ... did the Supreme Court confer dispositive weight upon the petitioner’s actual strategic decisions. And, although St. Cyr gives reliance a central role in its retroactivity analysis, the Court there conspicuously applies its holding to all petitioners who took guilty pleas before the effective date of IIRIRA — irrespective of any showing that St. Cyr himself actually relied on the availability of § 212(c) relief.”). Further, relying on reasoning set forth by the Third Circuit in Ponnapula, 373 F.3d at 489-90, the court in Hem explicitly rejected our reasoning in Rankine, as follows:
First, with the exception of a single passing reference to another case, Rankine never once mentions the presumption against retroactivity. As the Court made clear in Landgraf and its progeny, however, this presumption informs every step of the Landgraf inquiry. Second, the particular strategic decisions of the individual petitioners are given dis-positive weight in the retroactivity analysis, not whether they, as a class, faced new legal consequences to their completed conduct. Finally, Rankine appears to turn the presumption against retroac-tivity on its head by demanding that petitioners point to conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c) by going to trial.
458 F.3d at 1196 (alterations, citations, and internal quotation marks omitted). Accordingly, the court in Hem “confldentfly]” followed “the objective reliance approach to retroactivity ... in determining whether the repeal of § 212(c) has retroactive effects.” Id. at 1199.
On the other side of this split, along with our Circuit, the First, Fifth, and Seventh Circuits require that petitioners show individualized, subjective detrimental reliance. See, e.g., Dias v. INS, 311 F.3d 456, 458 (1st Cir.2002) (holding that IIRIRA’s repeal of § 212(c) was not impermissibly retroactive to petitioners who did not rely on pre-IIRIRA law because the “retroactivity analysis must include an examination of reliance”) (citing Mattis v. Reno, 212 F.3d 31, 38 (1st Cir.2000) (A petitioner must have “actually and reasonably relied” on the availability of relief for IIRIRA’s repeal of § 212(c) to have retroactive effect.), abrogated on other grounds by St. Cyr, 533 U.S. at 325-26, 121 S.Ct. 2271), cert. denied, 539 U.S. 926, 123 S.Ct. 2574, 156 L.Ed.2d 603 (2003); Carranza-De Salinas v. Gonzales, 477 F.3d 200, 205 (5th Cir.2007) (“[Tjhis circuit requires an applicant who alleges continued eligibility for § 212(c) relief to demonstrate actual, subjective reliance on the pre-IIRIRA state of the law to be eligible for relief from its retroactive application.”); De Horta Garcia, 519 F.3d at *661 (“[W]e require! ] a showing of specific facts demonstrating actual reliance.”); see also Brooks v. Ashcroft, 283 F.3d 1268, 1274 (11th Cir.2002) (finding meritless petitioner’s Equal Protection claim, because, unlike aliens who *386 plead guilty prior to the enactment of IIR-IRA, petitioner, who was convicted at trial, “did not so choose to rely upon the agreed upon terms of a plea” and because his case did not present “the same concerns of quid pro quo, benefit for an exchange, between a defendant and the government”).
Even within these Circuits, however, individual judges have expressed disagreement with the actual reliance requirement. For example, in Thom, Judge Calabresi noted that were he “judging on a clean slate, [he] would read the Supreme Court’s seminal decision on civil retroactivity, Landgraf [] — at a minimum — to say that, where Congress has not made its intent clear, courts should presume that any civil statute that would be considered ex post facto in the criminal context was meant to apply prospectively only.” 369 F.3d at 163 n. 6. Judge Calabresi explained that “[t]his reading would be particularly appropriate in cases where, as here, the civil law in question imposes consequences very like those of criminal penalties,” and that he “would expect that the Supreme Court’s future decisions in this field will confirm such readings of Landgraf.” Id. Likewise, in his dissenting opinion in Thom, Judge Underhill argued that “[although there is no denying that considerations of reliance are often illuminating in making retroac-tivity determinations (indeed, the presence of reliance may very well provide the most compelling indication of unfair retroactivity), ‘detrimental reliance’ is not the sine qua non of retroactivity analysis.... The existence of reliance supported the holding in St. Cyr, but the holding in St. Cyr does not require the existence of reliance.” Id. at 167-73. Similarly, in a concurring opinion in De Horta Garcia, 519 F.3d at *664-65, Judge Rovner of the Seventh Circuit stated, “the Fourth Circuit’s opinion in Olatunji ... makes a compelling case for the proposition that reliance is not properly an element of the retroactivity inquiry.” Judge Rovner further opined that “[t]o the extent that reliance ought to play any role in the retroactivity analysis, it is objective rather than subjective rebanee that should be considered,” and she concluded that “the precedents that stand in De Horta Garcia’s path may be incorrect and should be re-visited.” Id. at *666. District judges within our Circuit have also expressed their disagreement with the reliance requirement. See, e.g., Beharry, 183 F.Supp.2d at 591 (Weinstein, J.) (‘Domond ... should be reconsidered as the courts interpret and develop the Supreme Court’s more recent immigration rulings and the requirements of international law.”); Mohammed v. Reno, 205 F.Supp.2d 39, 47 (E.D.N.Y.) (Gleeson, J.) (“Implicit in [Do-mond’s ] conclusion is the premise that an impermissible retroactive effect under Landgraf occurs only where a person has knowledge of the law at the time of his actions and actually relies on it. Landgraf simply does not support-indeed, it would undermine-that rationale.”), stay pending appeal vacated, 309 F.3d 95, 103 (2d Cir.2002) (recognizing “the possibility that the Supreme Court might interpret its St. Cyr opinion more expansively than we have”).
IV.
As the above illustrates, whether-and to what extent-a showing of reliance on the prior law is required to demonstrate impermissible retroactive effect of a new law is the subject of much debate and, perhaps, “should be re-visited” or reviewed. See De Horta Garcia, 519 F.3d at *666 (Rovner, J., concurring). Nevertheless, for the moment, an individualized showing of actual reliance is required in our Circuit, and this, Zuluaga is unable to demonstrate. Accordingly, while I disagree with the majority that application of the stop-time rule imposes no new legal conse *387 quences on Zuluaga’s past conduct, I must concur in the judgment.

. The majority again errs when it states that Zuluaga "would have been deportable without possibility of discretionary relief had he been convicted before he accrued seven years.” In fact, Zuluaga would only have been deportable "without possibility of discretionary relief” had he been convicted, served with an NTA, and ordered removed before he had accrued his seven years residency, which occurred one month after he committed the offense. See Arenas-Yepes, 421 F.3d at 115.

. Indeed, the "new legal consequences” for the petitioners in Rankine were the same as those for St. Cyr. The only difference between the two is that while St. Cyr had pled guilty prior to enactment of the new law, the petitioners in Rankine were convicted at trial prior to enactment of the new law.

. While this passage appears to suggest that the Supreme Court in Fernandez-Vargas required a showing of detrimental reliance, as explained in more detail in section III below, I believe such a suggestion is unsupportable.

. Contrary to the majority’s assertion, I in no way intend to suggest that "reliance is the only factor relevant to retroactivity analysis in . immigration cases in this Circuit,” or that it is the "sole factor considered in our jurisprudence in immigration cases raising retroactivity concerns.” Rather, my view is that under our precedent a showing of reliance is necessary, though not always sufficient, to demonstrate impermissible retroactive effect. Some other factor-for example failure to show retroactive application or effect of" the new law-could also doom a petitioner’s claim. See, e.g., Fernandez-Vargas, 126 S.Ct. at 2434 ("Because we conclude that § 241(a)(5) has no retroactive effect when applied to aliens like Fernandez-Vargas, we affirm the judgment of the Court of Appeals.”); Puello v. BCIS, 511 F.3d 324, 333 (2d Cir.2007) ("Puel-lo's claim is without merit because the amendments were not applied retroactively to him.”).
To the extent the majority argues that our Court does not require a showing of reliance in cases where new legal consequences have attached to past acts, this contention — though appealing for the reasons set forth in section III below — is, in my view, unsupportable. Domond v. INS, 244 F.3d 81 (2d Cir.2001), relied on by the majority, was decided before the Supreme Court decided St. Cyr, and, as stated above, our post-Sf. Cyr precedent — relying on the "strong signals” we perceived the Supreme Court to have sent out in St. Cyr— has since held that a showing of reliance is required. Rankine, 319 F.3d at 99. Indeed, Rankine cannot be read in any other manner. *381 See, e.g., Thom, 369 F.3d at 163 n. 6. Moreover, the manner in which we held that Do-mond remains good law after St. Cyr further demonstrates that after St. Cyr, reliance is viewed as a requirement in our Circuit, See Khan v. Ashcroft, 352 F.3d 521, 523 (2d Cir.2003) ("[WJhereas in St. Cyr[], the alien’s plea of guilty prior to the passage of AEDPA § 440(d) could have been entered in reliance on the possibility of being granted a § 212(c) discretionary waiver of deportation, in Do-mond we noted that, in contrast, 'it cannot reasonably be argued that aliens committed crimes in reliance on' such a possibility.” (quoting Domond, 244 F.3d at 86)). Finally, the majority does not, and in my view cannot, square the contention that reliance is not required with the reasoning and holding of Rankine and its progeny (as set forth above), nor does it address decisions from other circuits (as set forth below), which have explicitly recognized our controversial reliance requirement.

. While we have rejected this argument as “borderfing] on the absurd,” I note that whether it should be rejected at all is subject to dispute. See, e.g., Thom, 369 F.3d at 168 n. 2 (Underhill, J., dissenting) ("I note that this oft-quoted passage is one that conflicts with my 'sound instincts' as a judge. If it is, indeed, absurd to suggest that a person contemplating the commission of a crime considers the potential consequences of criminal conduct, then Congress and the Sentencing Commission surely are misguided in their attempts to deter crime through increased sentences. I respectfully suggest that it is far from absurd to believe the prospect of certain deportation, rather than possible deportation, might well deter a significant number of aliens from committing aggravated felonies.” (citing Landgraf, 511 U.S. at 270, 114 S.Ct. 1483)); Restrepo, 369 F.3d at 632 n. 8 (“We ... note that, in the context of criminal sanctions, similar retroactive increases in penalties have been considered to raise serious concerns under the Ex Post Facto Clause, presumably because they violate notice rather than reliance interests." (internal citation omitted)); Beharry v. Reno, 183 F.Supp.2d 584, 590 (E.D.N.Y.2002) (Weinstein, J.) (“The court of appeals’ argument in Domond ... might be viewed by some as missing the mark.”), rev’d on jurisdictional grounds, 329 F.3d 51 (2d Cir.2003); see also St. Cyr, 229 *382 F.3d at 419 ("[L]awful permanent residents are typically part of a resident alien community and are likely aware of what happens to other members of the community who engage in criminal conduct.”).

. Zuluaga argues that "[h]ad he been aware at the time he entered his guilty plea that his eligibility for relief from removal would be pretermitted, he would have considered foregoing the plea.” Even if we were to view the conviction as the operative event for determining whether settled expectations were upset, however, such an argument is foreclosed by our precedent. See Domond, 244 F.3d at 86 (holding that aliens who entered guilty pleas after the new law went into effect could not establish impermissible retroactivity); Khan, 352 F.3d at 524 ("St. Cyr II, like Do-mond, evaluated aliens’ expectations in light of 'the time of their plea under the law then in effect.' ") (citing St. Cyr, 533 U.S. at 326)(em-phasis added). Zuluaga and amicus advance no other reliance arguments. Accordingly, I take no view as to whether Zuluaga might have some other colorable reliance claim under Restrepo, Wilson, of their progeny.